584 June 22, 2017 No. 34

IN THE SUPREME COURT OF THE
STATE OF OREGON

Alex SPEARMAN,
*Petitioner on Review,*

*v.*

PROGRESSIVE CLASSIC
INSURANCE COMPANY,
a Wisconsin corporation,
*Respondent on Review.*

(CC 1302-01718; CA A155674; SC S063995)

On review from the Court of Appeals.*

Argued and submitted November 14, 2016.

Willard E. Merkel, Merkel & Associates, Portland, argued the cause and filed the brief for petitioner on review.

James B. Rich, Harris, Wyatt & Amala, LLC, Salem, argued the cause and filed the brief for respondent on review.

Lisa T. Hunt, Law Office of Lisa T. Hunt, LLC, Lake Oswego, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, and Brewer, Justices, and DeHoog, Judge of the Court of Appeals, Justice pro tempore.**

LANDAU, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

------------
* Appeal from Multnomah County Circuit Court, Nan G. Waller, Judge. 276 Or App 114, 366 P3d 821 (2016).

** Baldwin, J., retired March 31, 2017, and did not participate in the decision of this case. Nakamoto and Flynn, JJ., did not participate in the consideration or decision of this case.

**LANDAU, J.**

ORS 742.061(1) generally provides for an award of attorney fees when an insured brings an action against his or her insurer and recovers more than the amount tendered by the insurer. ORS 742.061(3) provides a "safe harbor" for the insurer in uninsured motorist (UM) cases: An insured is not entitled to attorney fees if, within six months of the filing of a proof of loss, the insurer states in writing that it has accepted coverage, that it agrees to binding arbitration, and that the only remaining issues are the liability of the uninsured motorist and the "damages due the insured."

At issue in this case is what the safe-harbor statute means when it refers to the "damages due the insured." The insurer, Progressive Classic Insurance Company, responded to plaintiff's claim by agreeing that the accident was covered by the policy, but challenging the nature and extent of plaintiff's injuries, as well as the reasonableness and necessity of his medical expenses. Plaintiff argues that, by reserving the right to challenge the nature and extent of his injuries, Progressive raised issues that went beyond the "damages due the insured." According to plaintiff, to qualify for the safe harbor in ORS 742.061(3), an insurer must agree that it owes some amount above zero in benefits, so that the only remaining issues must concern the particular amount above zero that the insurer owes.

The trial court and the Court of Appeals, *Spearman v. Progressive Classic Ins. Co.*, 276 Or App 114, 366 P3d 821 (2016), both rejected plaintiff's construction of the safe-harbor statute. For the reasons that follow, we do as well and affirm the decision of the Court of Appeals and the judgment of the circuit court.

## I.   FACTS

Plaintiff purchased an automobile insurance policy from Progressive. The policy included UM coverage with a limit of $25,000.

Plaintiff was injured in an automobile accident with an uninsured motorist. Plaintiff filed a proof of loss for UM benefits with Progressive. Within six months, Progressive sent a letter to plaintiff that stated:

"Pursuant to ORS 742.061(3)(a) and (b), please be advised that Progressive Classic Insurance Company has accepted coverage for the above matter and the only issues are the liability of the [u]ninsured motorist and damages due to [plaintiff]. Progressive Classic consents to submit this case to binding arbitration if we cannot resolve this matter."

Progressive paid plaintiff some benefits, but the parties were unable to resolve their dispute about the extent of the insurer's UM liability. So plaintiff filed an action against Progressive in circuit court. Plaintiff's complaint alleged:

"4.   That on or about August 5, 2012, Plaintiff, an insured person under the terms of Defendant's aforesaid insurance policy, was operating the insured vehicle southbound on NE 82nd Avenue near its intersection with NE Brazee Street, public roadways in Portland, Multnomah County, Oregon, when he stopped his automobile [for] traffic stopped ahead and was struck by an automobile operated by [a named driver].

"5.   That the aforesaid accident was caused by an uninsured vehicle and motorist as defined in the policy and at ORS 742.502(2)(a)."

It further alleged that, as a result of the accident, plaintiff was required to incur medical expenses that should have been reimbursed as part of his uninsured motorist coverage. And it alleged that plaintiff had "performed all preconditions to the recovery of benefits under the policy of insurance" that Progressive had issued. Plaintiff prayed for an award of his unpaid UM damages in an amount not to exceed the $25,000 UM policy limit.

In its answer, Progressive alleged that it "[a]dmits the allegations contained in paragraph 4, except that [it] lacks information and knowledge as to whether or not plaintiff was stopped at impact." Progressive further stated that it "admits that plaintiff sustained 'some' injury as a result of the alleged accident; but disputes the nature and extent of plaintiff's alleged injuries." It also admitted that plaintiff had submitted a claim for some medical expenses, but denied "the reasonableness and necessity of some of plaintiff's accident-related medical expenses."

Plaintiff served Progressive with a request for admissions. In response, Progressive admitted that plaintiff had done everything required of him to be eligible for uninsured motorist benefits; admitted that plaintiff had suffered "some" injury, although Progressive disputed the nature and extent of the injury; and admitted that plaintiff had suffered "some" economic damages, although Progressive denied "the reasonableness, necessity, relatedness, and extent" of the economic damages that plaintiff had claimed.

The matter was transferred to the court's arbitration program, and the arbitrator awarded plaintiff $6,022.80 under the UM provisions of the policy. Plaintiff requested attorney fees under ORS 742.061(1). Progressive asserted that it was entitled to the safe harbor of ORS 742.061(3). The arbitrator agreed with Progressive and denied the fee request.

Plaintiff challenged in circuit court the arbitrator's failure to award attorney fees. The parties did not dispute that the conditions generally necessary for a fee award under ORS 742.061(1) had been met. The sole dispute was over whether Progressive had met the requirements for the safe harbor set out in ORS 742.061(3). Relying on this court's decision in *Grisby v. Progressive Preferred Ins. Co.*, 343 Or 175, 182-83, 166 P3d 519, *adh'd to as modified on recons*, 343 Or 394, 171 P3d 352 (2007), plaintiff argued that, because Progressive had raised issues that could have resulted in an award of zero damages, the insurer had raised issues beyond "the damages due the insured." Plaintiff argued that, although *Grisby* concerned a statutory provision that applied only to personal injury protection (PIP) benefits, its holding should be extended to this case. That means, he contended, that Progressive "was required to frame its pleadings to concede that the trier of fact was required to award *some* damages." (Emphasis in original.)

The trial court rejected plaintiff's argument and denied the fee request. Plaintiff appealed. Before the Court of Appeals, he advanced the same argument that he had in the circuit court: that *Grisby*'s reasoning as to the PIP safe harbor should apply to ORS 742.061(3), and that Progressive's dispute as to the reasonableness of plaintiff's medical bills

meant that Progressive had raised issues beyond the quantum of "damages due the insured."

Progressive responded it had satisfied the safe-harbor requirements of ORS 742.061(3) in that it had accepted coverage, agreed to arbitration, and challenged only the damages due plaintiff. *Grisby*, it argued, was distinguishable because that case had interpreted a different statute with different text concerning PIP—not UM—benefits.

Sitting en banc, the Court of Appeals affirmed. Key to understanding the safe-harbor statute, the court explained, is the nature of the particular category of insurance to which it applies, namely, UM coverage. At the core of every action to recover UM benefits is the idea that the uninsured motorist "would be liable to the insured in a civil action for some amount of damages for bodily injury." 276 Or App at 121. Thus, the court reasoned, the phrase "damages due the insured" in ORS 742.061(3) refers to "the amount of damages (if any) that the insured would be entitled to recover from the uninsured motorist." *Id.* at 127. A dispute over the "damages due the insured" in the context of a claim for UM benefits might well result in an award of zero benefits, the court said. But that does not foreclose the application of the safe-harbor statute. *Id.* at 127-28.

The court concluded that *Grisby* was distinguishable in that it construed the safe-harbor provision that applies only to PIP benefits, and not UM. In particular, the court noted that the statutory safe-harbor provision relating to claims for UM benefits permits an insurer to contest the liability of the uninsured motorist. *Id.* at 123. There is no parallel provision in the PIP provision, the court observed, and plaintiff's proposed interpretation fails to take into account that key textual distinction. *Id.*

## II.   ANALYSIS

On review, plaintiff argues that the Court of Appeals erred in drawing on the nature of UM coverage in interpreting the safe-harbor statute. In his view, although it is true that the purpose of UM coverage is to put the injured person in the same position as he or she would have been if injured by an insured motorist, "the legislative history of

ORS 742.061(3) does not suggest that the safe harbor statute was intended to have that scope." Rather, he argues, the legislature intended the safe-harbor statute that applies to UM claims to have the same effect as the parallel provision that applies to PIP claims. Because *Grisby* already has held that the safe-harbor statute for PIP claims applies only if the insurer agrees that it owes something more than zero benefits, plaintiff concludes that the same must apply to ORS 742.061(3).[1] In this case, he asserts, Progressive lost the protection of the safe harbor because it failed to agree that it owed him something more than zero in UM benefits.

The issue is one of statutory construction, which we resolve by applying familiar rules requiring us to determine the meaning of the words of the statute most likely intended by the legislature that enacted it, taking into account its text in context and the relevant legislative history. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009).

We begin with the text of the statute at issue. ORS 742.061(1) sets out the general rule concerning the availability of attorney fees in insurance claims:

"(1)    Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer

---

[1] In his brief, plaintiff advances an additional argument in favor of his contention that defendant is not entitled to the safe harbor of ORS 742.061(3). According to plaintiff, Progressive failed to "accept[] coverage," as the statute requires. As plaintiff sees it, "[w]hen Progressive denied that plaintiff's accident had occurred, it violated the 'coverage accepted' prong of the statute and lost safe harbor."

We readily reject the argument for either of two reasons. First, the argument was not preserved. We have examined the record of arguments that plaintiff raised before the trial court and the Court of Appeals, and nowhere do we find an assertion that defendant is not entitled to the safe harbor because it failed to state that it had "accepted coverage" within the meaning of the safe-harbor statute. Having failed to raise the issue below, plaintiff may not raise it now. *See, e.g.*, ORAP 9.20(2) (generally, issues on review before Supreme Court are "all questions *properly before the Court of Appeals* that the petition *** claims were erroneously decided by that court*" (emphasis added)); *State v. Ghim*, 360 Or 425, 442, 381 P3d 789 (2016) ("When a party has lost in the Court of Appeals, that party cannot ask us to reverse the Court of Appeals decision on a ground that the party did not raise in that court."). Second, and in any event, plaintiff's argument rests on a factually erroneous premise—namely, that Progressive "denied that plaintiff's accident had occurred." That assertion is flatly contradicted by the allegations of Progressive's answer, in which—as we have noted above—it specifically and expressly admitted that the accident had occurred.

and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

That general rule is subject to either of two enumerated exceptions, or "safe harbors." The first exception, specified in subsection (2), applies to claims for PIP benefits:

"(2)   Subsection (1) of this section does not apply to actions to recover personal injury protection benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has accepted coverage and the only issue is the amount of benefits due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration."

ORS 742.061(2). The second exception is stated in subsection (3) and applies to claims for UM benefits or underinsured motorist (UIM) benefits:

"(3)   Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration."

To claim the benefit of either safe harbor, the insurer must accept coverage and be willing to engage in binding arbitration on a limited set of issues. In the case of claims for PIP benefits, the only issue is "the amount of benefits due the insured." In contrast, in the case of claims for UM or UIM benefits, the issues are the liability of the uninsured or underinsured motorist and the "damages due the insured."

The fact that the two safe-harbor provisions are set out separately and with different conditions that apply to

claims for PIP and UM/UIM claims, respectively, suggests that the legislature, in enacting those provisions, saw some significant differences between the two categories of claims. So we digress briefly to address the relevant differences between the two.

Both PIP and UM/UIM refer to types of insurance that the law requires all motor vehicle liability policies to include. *See generally Dowell v. Oregon Mutual Ins. Co.*, 361 Or 62, 67-68, 388 P3d 1050 (2017) (PIP); *Vogelin v. American Family Mutual Ins. Co.*, 346 Or 490, 501-06, 213 P3d 1216 (2009) (UM/UIM). The former refers to a form of no-fault insurance coverage that requires "payments for expenses, loss of income and loss of essential services" as provided elsewhere by statute. ORS 742.520(3). In general, that amounts to payments for "medical expenses and loss of income." *Kessler v. Weigant*, 299 Or 38, 40 n 3, 699 P2d 183 (1985). An insurer is required to pay PIP benefits "promptly after proof of loss has been submitted to the insurer." ORS 742.520(4). As this court explained in *Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 300, 613 P2d 32 (1980), "the obvious purpose of [the PIP statutes] is to provide, promptly and without regard to fault, reimbursement for some out-of-pocket losses resulting from motor vehicle accidents."

The latter type of insurance refers to coverage for the risk of injury or death arising from an accident involving a vehicle that is either not insured at all in accordance with the state financial responsibility law (UM) or is insured at a level that is insufficient to pay the injured driver's damages in full (UIM). *See generally Vogelin*, 346 Or at 501-06 (summarizing nature of UM/UIM coverage). The law requires that such insurance pay all sums that the insured "is legally entitled to recover as damages from the owner or operator" of the uninsured or underinsured vehicle. ORS 742.504(1)(a). The focus of that particular type of insurance is thus "'to place the injured policyholder in the same position he would have been in if the tortfeasor had had liability insurance.'" *Vega v. Farmers Ins. Co.*, 323 Or 291, 305-06, 918 P2d 95 (1996) (quoting *Peterson v. State Farm Ins. Co.*, 238 Or 106, 112, 393 P2d 651 (1964)).

Accordingly, in contrast with PIP coverage, UM/ UIM coverage is predicated on the fault of the uninsured or underinsured motorist. As this court explained in *Vega*, "the insurer's obligation to pay [is] coextensive with the responsible party's liability," so that the "insured is placed in the same position—no better and no worse—than he or she would have occupied had the responsible party been insured." 323 Or at 306. The insured, in other words, is "legally entitled to recover" only to the extent that he or she could recover directly from the tortfeasor. *Id.*

Given the differences between PIP and UM/UIM coverage and benefits, it made sense for the legislature to phrase differently the issues that may be submitted to arbitration under the two different safe-harbor statutes. Because PIP is a no-fault type of insurance coverage, ORS 742.061(2) provides that the only issue will be the particular amount of benefits owed the insured. But because UM/UIM coverage entails the fault of the uninsured or underinsured motorist, ORS 742.061(3) provides that the issues that may include the liability of that motorist.

With that in mind, we return to the text of ORS 742.061(3), which specifies that the issues that the insurer may dispute without losing the benefit of the safe harbor include the "damages due the insured." The fact that the phrase "damages due the insured" appears in the safe-harbor provision concerning UM/UIM benefits strongly suggests that it refers to the type of damages that would be payable in that type of case, namely, the damages that the insured would be "legally entitled to recover" from the uninsured or underinsured motorist.

Nothing in the text of ORS 742.061(3) suggests that the "damages due the insured" must be some amount above zero. As we have explained, the nature of UM/UIM damages is that they constitute the amount that an insured would be "legally entitled to recover" from the uninsured or underinsured motorist. At least in some cases, that amount will be zero, because the uninsured or underinsured motorist was not liable in the first place. Confirming that very point is the fact that ORS 742.061(3) expressly includes "the liability of the uninsured or underinsured motorist" as one of the

issues that may be submitted to arbitration without losing the benefit of the safe-harbor statute.

Plaintiff insists that this court's decision in *Grisby* forecloses that reading of ORS 742.061(3). He reasons that, because the court in that case concluded that the safe harbor that applies to PIP claims under ORS 742.061(2) is not available unless the insurer agrees that it owes some quantum of benefits above zero, the same rule should apply to the safe harbor for UM/UIM claims under ORS 742.061(3). According to plaintiff, *Grisby*'s interpretation of ORS 742.061(2) applies to ORS 742.061(3) because the statutory phrase at issue in that case—the "amount of benefits due the insured"—is functionally the same as the "damages due the insured" under ORS 742.061(3).

Plaintiff acknowledges the difference in wording between the two statutes, as well as the fact that the term "damages" in the statutes governing UM/UIM coverage is used to refer to those damages that an insured is "legally entitled to recover" from the uninsured or underinsured motorist. He nevertheless urges the court to ignore references to any statutory provisions governing the nature of UM/UIM coverage because "the legislative history of ORS 742.061(3) does not suggest that the safe harbor statute was intended to have that scope." To the contrary, he contends, the legislative history "demonstrates an intent that both ORS 742.061(2) and (3) have the same meaning." (Emphasis omitted.)

Plaintiff's arguments are unavailing. In *Grisby*, the plaintiff was injured in an automobile accident and filed a claim for PIP benefits. The parties disputed the insurer's liability to pay PIP benefits. Plaintiff sued the insurer, prevailed, and asked for attorney fees under ORS 742.061(1). In response to the claim for attorney fees, the insurer claimed the benefit of the safe harbor that applied to PIP claims under ORS 742.061(2). This court rejected the insurer's argument, concluding that, because the insurer had disputed more than the "amount of benefits due the insured," the safe harbor did not apply. 343 Or at 182-83. The court's decision turned on the particular phrasing of ORS 742.061(2) and its reference to disputes over the "amount" of benefits. *Id.*

The court concluded that the legislature's use of that word suggested a dispute about a "quantity" of benefits in excess of zero. *Id.*

*Grisby* does not control our decision in this case. The court's decision as to the requirements of the safe-harbor provision for PIP claims in ORS 742.061(2) explicitly rested on its interpretation of wording that does not appear in the safe-harbor provision for UM/UIM claims. As we have noted, the two provisions are worded differently, and for reasons that have to do with significant differences between PIP and UM/UIM claims. To hold that *Grisby* controls our interpretation of ORS 742.061(3) would require us to ignore those differences. Specifically, it would require us to ignore the fact that the safe-harbor provision that applies to UM/UIM claims does not refer to disputes over an "amount" of benefits. Rather, it refers to disputes over the "damages due the insured," which, given the nature of UM/UIM claims, may in some cases be zero.

Plaintiff's reliance on the legislative history of the safe-harbor provisions is likewise unavailing. He contends that it "demonstrates" that the safe-harbor provisions for PIP and UM/UIM claims "have the same meaning." But he cites no legislative history that actually says that. To the contrary, the legislative history indicates that the legislature created two separate provisions precisely because of the differences between PIP and UM/UIM claims.

Before 1999, ORS 742.061 (1997)—now ORS 742.061(1)—generally provided for attorney fees whenever an insured prevailed in an action against his or her own insurer and recovered more than what the insurer had previously tendered. In the case of UM/UIM claims, though, the existing state of the law created an anomaly: If an injured motorist prevailed against a tortfeasor who had insurance, there was no provision in the law for the recovery of attorney fees. But, if the tortfeasor had no insurance, then a plaintiff otherwise in the same circumstances could seek recovery from his or her own insurer plus (potentially) attorney fees under ORS 742.061 (1997). It was precisely that anomaly that prompted representatives of the insurance industry to propose an amendment through Senate Bill 504 in 1999.

The amendment, as originally proposed, would have completely exempted UM and UIM claims (as well as PIP claims) from ORS 742.061 (1997). *See* Exhibit A, Senate Judiciary Committee, SB 504, April 29, 1999 (proposed amendments to SB 504).

Tom Mortland, an insurance industry attorney, explained in some detail how the existing law operated to encourage injured insureds to avoid negotiating with his or her insurer and instead proceed as quickly as possible to litigation:

> "An example illustrates the dynamics which are now in place. Picture an auto collision. Driver A negligently hits Driver B and injures B. In one scenario Driver A has insurance, in another he doesn't. Driver B has insurance which includes the required PIP and UM benefits. Driver B retains an attorney to represent her in recovering damages, or benefits, for her injury. Consider the scenario in which Driver A has liability insurance. B and her attorney present a claim to the liability insurer and resolve it through negotiation, or possibly mediation, or arbitration, or even through a civil suit which ends in a jury trial. In any event Driver B's attorney will very likely be paid on a contingency basis, the fee being a percentage, typically a third, of the recovery.

> "Now consider the scenario in which Driver A doesn't have insurance. Driver B presents a UM claim to her own insurer, and her attorney is faced with a choice. On one hand, the attorney can resolve this claim through negotiation, mediation[,] or arbitration, just as in the first scenario, and be paid an attorney fee which is a percentage of the recovery. On the other hand, the attorney can file suit against B's insurance company and possibly recover attorney fees *in addition* to the recovery. The advantage, and necessity, of filing suit is being recognized by attorneys all over the state. I say necessity because to *not* take advantage of the opportunity for attorney fees on top of the recovery could well constitute legal malpractice."

Testimony, Senate Judiciary Committee, SB 504, April 29, 1999, Ex B, at 2 (testimony of Tom Mortland) (emphases in original).

The problem with the existing law was not just that it created incentives to litigate UM/UIM claims against

insurers. It also was that, in so doing, the law compromised the very purpose of UM and UIM coverage, which, as we have noted, is "to place the injured policyholder in the same position he would have been in if the tortfeasor had had liability insurance." *Vega*, 323 Or at 305-06 (internal quotation marks and citation omitted). As Mortland's example made clear, an insured who had been injured by an uninsured motorist actually was put in a *better* position than he or she would have been had the tortfeasor been insured: With an insured tortfeasor, the net recovery would be damages *minus* attorney fees, while with an uninsured motorist, the net recovery might be damages *plus* attorney fees. Susan Youngstrom, a claims adjuster, made that point in her testimony:

> "Since an attorney can file suit and claim attorney fees under this statute, a person with an uninsured claim is suddenly in a better position than a person with a claim against a known, insured party. The [insured's] attorney can go to court and if he gets one dollar more than what was offered by the claims adjuster, he will get his attorney fees from the date he sent the [proof of loss] letter. *** That means his client gets to keep all of the award and the judge will grant his attorney fees in addition to that amount."

Testimony, Senate Judiciary Committee, SB 504, April 29, 1999, Ex C, at 1 (testimony of Susan Youngstrom).

Representatives of the private plaintiffs' bar opposed the bill. But, in the end, they and insurance industry representatives negotiated a compromise bill that would have limited the exemption from ORS 742.061 (1997) to UM, UIM, and PIP claims in which the insurer accepted coverage and consented to binding arbitration, so long as the only contested issues were "the liability of the uninsured or underinsured motorist and the damages due the insured." Exhibit L, Senate Judiciary Committee, SB 504, May 20, 1999 (proposed amendments to SB 504) (reflecting consensus proposal and including changes announced orally by witnesses at work session on May 13, 1999).

Robert Neuberger, an attorney appearing on behalf of the plaintiffs' bar, explained the compromise proposal in the following terms:

"The concept that we have before you \*\*\* is this, and here's how it would work for PIP, UM, and UIM claims: It'll still be just like always. The insured suffers a loss, files a proof of claim, er, notice of claim, and (if it is in one of those cases that isn't resolved short of litigation) the case goes into litigation. Generally now [under this bill] there would be an exception for PIP, UM, and UIM claims if the insurer did the following—within that six-month period in which a proof of claim was made, it did the following in writing: agree that there was no dispute as to coverage, and that for UM and UIM claims that the only issue was going to be the liability of the uninsured or underinsured motorist and the amount of the damages to the injured party, and consented \*\*\* that it would use binding arbitration as alternative dispute resolution."

Audio Recording, Senate Judiciary Committee, SB 504, May 13, 1999, at 4:20 (testimony of Robert Neuberger), http://records.sos.state.or.us/webdrawer/webdrawer. dll/webdrawer/rec/4234645/ (accessed June 12, 2017). Neuberger then explained how the compromise would work in the case of an uninsured motorist claim. If the insurer wanted to avoid attorney fees:

"They can simply write a letter, no legal form required, and say, 'There's no dispute about coverage—the premiums were paid, it wasn't a stolen car, you weren't using \*\*\* your car for business purposes and got hurt on the job—and so the only issues that are left are liability for the UM and UIM claim and damages, and we also'—insurance company say[s]—'and we also consent to be bound by arbitration, to use binding arbitration.' Now it kicks back over to the insured, the person who paid the premiums, and they can elect to stay in court, in circuit court, and have their case tried to a judge or a jury, but not get attorney's fees, or they can go to binding arbitration. \*\*\* It's no stick, it's all carrot."

*Id.* at 6:15. On the other hand, Neuberger explained, the insurer could raise other issues, but at the risk of facing attorney fees:

"If the insurance company \*\*\* disputes coverage, says we're not only going to dispute liability or damages, we don't even think you're covered, or says we won't be bound by arbitration, we won't use binding arbitration, then the

> insured—the person who pays the premiums—gets to keep their case in court If \*\*\* they prevail and they beat the offer, \*\*\* then the court is to award reasonable attorneys fees."

*Id.* at 7:15.

Tom Mortland, again appearing on behalf of the insurance industry, confirmed that Neuberger had accurately represented the substance of the compromise. *Id.* at 8:10 (testimony of Tom Mortland).

Staff counsel for the Senate Judiciary Committee, however, noted that the proposed bill, as amended, treated UM/UIM and PIP claims the same, which made no sense in light of the differences between the types of insurance. In particular, she noted, PIP involves no issues of fault. Apparently, the issue had already been raised in the House, and there was agreement in advance to address PIP and UM/UIM claims in separate subsections. As counsel explained it to the Senate Judiciary Committee, there was

> "concern that condition (a), the second half of it, those issues ['the liability of the uninsured or underinsured motorist and the damages due the insured'] would never arise in a personal injury protection instance and so they have agreed in the House to better specify the fact that (a) and (b) actually will apply in uninsured and underinsured motorist cases and (b) will apply in the PIP cases."

Audio Recording, Senate Judiciary Committee, SB 504, May 20, 1999, at 49:30 (statement of staff counsel Anne Tweedt), http://records.sos.state.or.us/webdrawer/webdrawer. dll/webdrawer/rec/4234649/ (accessed June 14, 2017). With an appropriate amendment to separate UM and UIM claims from PIP claims, the bill passed both houses and was signed into law.

The legislative history thus offers two insights that are pertinent to the issues in this case. First, the impetus for the legislation that ultimately resulted in the enactment of the two safe-harbor provisions in 1999 was the fact that existing law undercut the basic, underlying principle of UM and UIM coverage, which is "to place the injured policyholder in the same position he would have been in if the

tortfeasor had had liability insurance." *Vega*, 323 Or at 305-06 (internal quotation marks and citation omitted). Second, while the initial draft of the bill that ultimately was codified at ORS 742.061(2) and (3) treated PIP and UM/UIM claims the same, the legislature made a conscious choice to create separate safe-harbor provisions for each, to reflect the differences between the two types of insurance. In both respects, the legislative history lends support for the interpretation of ORS 742.061(3) that we have concluded is evident from its text in context. And, in both respects, it contradicts plaintiff's proposal that we treat the two safe-harbor provisions as having identical effect.

## III.   APPLICATION

We turn, then, to the facts of this case. As we noted above, in response to plaintiff's proof of loss for uninsured motorist benefits, Progressive sent a letter that fully complied with ORS 742.061(3). The letter stated that Progressive had accepted coverage and agreed to binding arbitration, reserving only the issues of the liability of the uninsured motorist and the damages due to plaintiff. That much is undisputed.

The question for us is whether, in response to plaintiff's subsequent claim against Progressive, the insurer raised issues beyond "the damages due the insured," thus placing it outside the safe harbor. *Kiryuta v. Country Preferred Ins. Co.*, 360 Or 1, 5, 376 P3d 284 (2016) (examining issues as framed by pleadings to determine whether issues were limited to those listed in ORS 742.061(3)).

We conclude that Progressive's pleadings did not raise any issue that would remove it from the safe harbor of ORS 742.061(3). When plaintiff filed his claim against Progressive in the trial court, the insurer admitted that plaintiff had insurance coverage and that plaintiff was injured in an automobile accident with an uninsured motorist, but disputed the "nature and extent of plaintiff's alleged injuries," as well as the "reasonableness and necessity of some of plaintiff's accident-related medical expenses." And, in response to requests for admissions, Progressive admitted that plaintiff had done everything required of him to be eligible for UM benefits, though it denied "the reasonableness, necessity, relatedness, and extent" of plaintiff's damages.

Plaintiff argues that, because it is conceivable that, as framed by the foregoing pleadings, Progressive could have established that it owed plaintiff nothing, those issues go beyond those listed in ORS 742.061(3). We accept for the sake of argument that it is at least possible that Progressive could have established that it owed plaintiff nothing in UM benefits because, although Progressive admitted that plaintiff was injured in an accident with an uninsured motorist, plaintiff may not have incurred reasonable and necessary medical expenses resulting from those injuries.[2] As we have concluded, that does not establish that the insurer raised issues beyond the "damages due the insured," as that term is used in ORS 742.061(3). Because Progressive fell within the safe harbor of ORS 742.061(3), it was not subject to the attorney fee provision of ORS 742.061(1). The trial court correctly denied plaintiff attorney fees.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[2] This case does not require us to consider whether an insurer that contests whether any of a plaintiff's injuries were caused by an uninsured motorist, as opposed to contesting the "reasonableness, necessity, relatedness and extent" of that plaintiff's injuries and medical expenses, is entitled to the benefit of the safe-harbor provisions.