Argued and submitted July 6, affirmed October 6, 2021; petition for review
denied April 7, 2022 (369 Or 507)

Amanda KOENIG,
*Plaintiff-Appellant,*

*v.*

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,
an Illinois corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
18CV26241; A173132

500 P3d 68

Plaintiff appeals from a judgment on her underinsured motorist (UIM) claim against State Farm Mutual Automobile Insurance Company (State Farm). First, plaintiff argues that the trial court erred in a post-trial proceeding by granting an offset of $15,000 for personal injury protection (PIP) benefits against the jury's award of damages of $82,734.41, resulting in a net judgment of $67,734.41. Second, she argues that the trial court erred at trial of her UIM claim in excluding evidence of State Farm's payment of PIP benefits. Finally, she argues that, because State Farm disputed the amount of damages based on causation, the trial court erred in denying her request for attorney fees under ORS 742.061. *Held*: First, the trial court did not err in employing a post-trial proceeding to determine and offset State Farm's PIP payments from damages determined at trial of the UIM claim. State Farm was not required to offer evidence of its PIP payments at the trial of plaintiff's UIM claim. Second, given that the trial court considered the marginal relevance of PIP payments to the UIM claim and the prospect of an unfairly prejudicial effect of that evidence, the trial court did not abuse its discretion when excluding evidence of PIP payments from the UIM trial. Finally, State Farm's challenge to the extent of plaintiff's damages based on causation did not expose the insurer to risk of having to pay plaintiff's attorney fees. The trial court did not err in denying plaintiff's request for attorney fees under ORS 742.061.

Affirmed.

Michael A. Greenlick, Judge.

Willard E. Merkel argued the cause for appellant. Also on the briefs was Merkel & Associates.

Andrew D. Glascock argued the cause for respondent. Also on the brief were Glascock, Street, Waxler, LLP.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Affirmed.

**DeVORE, P. J.**

Plaintiff appeals from a judgment on her under-insured motorist (UIM) claim against State Farm Mutual Automobile Insurance Company (State Farm). She assigns several errors. First, she argues that the trial court erred in a post-trial proceeding by granting an offset of $15,000 for personal injury protection (PIP) benefits against the jury's award of damages of $82,734.41, resulting in a net judgment of $67,734.41. Second, she argues that the trial court erred at trial of her UIM claim in excluding evidence of State Farm's payment of PIP benefits. Finally, she argues that, because State Farm disputed the amount of damages based on causation, the trial court erred in denying her request for attorney fees under ORS 742.061. We affirm for the reasons that follow.

## PROCEEDINGS

The dispositive facts are undisputed. In July 2016, plaintiff was injured in a motor vehicle accident involving an underinsured vehicle. Plaintiff brought this claim against her auto insurer, State Farm, for UIM benefits. State Farm's policy provided UIM coverage up to $100,000. Plaintiff alleged that State Farm breached the policy by failing to pay all that is due, alleged that she incurred medical bills of $158,814.88, alleged that State Farm had paid $15,000 of those bills as PIP benefits, and prayed for an award of $100,000.[1] State Farm admitted that it provided UIM coverage and that the underinsured driver was negligent. But State Farm disputed the amount of plaintiff's damages.

In June 2018, State Farm paid plaintiff $17,265.59— its opinion of the value of plaintiff's UIM claim and an "advance payment" in the language of its cover letter. In an amended answer, State Farm alleged that its advance payment of UIM benefits entitled State Farm to an offset and that it had also paid $15,000 in PIP benefits, warranting an offset from damages. Finally, State Farm alleged that

---

[1] Incidentally, plaintiff received $1,000 from the driver of the underinsured vehicle. After January 1, 2016, payments from an at-fault driver's liability insurer no longer reduced UIM limits. ORS 742.502(2)(a); *see* Or Laws 2015, ch 5, § 2.

plaintiff had refused an offer of binding arbitration after State Farm had sent a "safe harbor" letter accepting coverage and agreeing to dispute only the amount of benefits owing plaintiff, such that plaintiff was not entitled to recover attorney fees under ORS 742.061(3).

Before trial began in July 2019, State Farm filed a motion *in limine*, among other things, seeking to exclude evidence of PIP payments at the UIM trial. During discussion of the motion, the trial court expressed concern about plaintiff's proposed verdict form and the prayer in plaintiff's complaint that proposed to limit the jury's finding of damages to $100,000, when the damages alleged could be higher than that amount. Addressing that concern, State Farm underscored that it claimed an offset for PIP payments against damages pursuant to ORS 742.542. The court commented, "The offset happens post-trial with these PIP payments." The court indicated that evidence of PIP payments would not be relevant and would not be admitted in the trial itself.

In that discussion, the trial court offered to allow plaintiff to amend her complaint so that the jury could determine actual damages, in an amount greater than the $100,000 policy limits, for purposes of subtracting PIP payments in a post-trial calculation. The court explained:

> "I understand that the Plaintiff has limited their complaint to $100,000. Given the Court's ruling, I will allow the [p]laintiffs to amend their complaint by interlineation, if they wish, to allege the full $258,814.88 in their prayer, but they're not required to do so, obviously.

> "If they want to include that full amount in their prayer, then we'll just have the—we'll explain to the jury that their job is to determine the damages. We'll give them a verdict form telling them that they can't allow—they can't find damages in excess of that $258,000 figure, and the Court will then reduce the damages to the extent of the policy at the end of the case.

> "If the Plaintiff doesn't wish to amend their complaint by interlineation, then the jury will be told that their award cannot exceed $100,000, and we won't explain why.

> "So that's the [p]laintiff's choice at this time."

Plaintiff's counsel replied, "I understand, and in response, Your Honor, we will not be amending the complaint."

At trial, plaintiff offered evidence that she incurred medical expenses of $158,814.88. State Farm admitted that medical bills of $3,515 were reasonable, necessary, and related to the accident, but it disputed additional bills as unrelated. To dispute damages, State Farm offered the testimony of a physician and biomechanical expert. After State Farm rested its defense case, plaintiff indicated she intended to testify in rebuttal that State Farm paid PIP benefits. As before, State Farm objected to that proposed testimony, based on the differing nature of PIP and UIM coverage. The court sustained the objection.

After the parties and trial court discussed jury instructions, the form of a verdict, and plaintiff's approach to the case, the jury was instructed that State Farm had already paid $17,265.59 in UIM benefits and that the maximum, potential, total amount of economic and noneconomic damages was $82,734.41. The jury returned its verdict finding plaintiff's economic damages to be $72,734.41 and noneconomic damages to be $10,000 for a total of $82,734.41.

In a post-trial proceeding, the court granted State Farm's motion to offset its PIP payments of $15,000 from the jury's determination of damages. The judgment was entered in plaintiff's favor in the sum of $67,734.41.

## OFFSET OF PIP PAYMENTS

Given the nature of the dispute presented by the first assignment of error, we review for errors of law. *Cooksley v. Lofland*, 289 Or App 103, 106, 407 P3d 954 (2017). In her first assignment, plaintiff asserts that the trial court erred in granting State Farm's post-trial motion for an offset. Plaintiff concedes that State Farm is potentially entitled to offset its PIP payments against damages but argues that State Farm must allege and prove its PIP payments at trial as an affirmative defense under ORCP 19 B and that State Farm failed to do either. We unpack that argument to address its several parts—as questions of pleading, proof, and procedure.

The pleading question has a simple answer despite some confusion. In the trial court, plaintiff and State Farm both eventually acknowledged that State Farm's amended answer had pleaded an affirmative defense of offset. During proceedings, plaintiff had proposed a form of order allowing an amended complaint and amended answer, but the proposed order had been left unsigned by another judge due to form-compliance reasons. The trial judge commented that the apparent rejection ought not to have happened. Plaintiff promised to resubmit the order allowing amendment but did not. Nevertheless, both parties proceeded on their amended pleadings, which were filed of record, with or without formal approval. On appeal, plaintiff now argues that defendant failed to plead offset. Seeing this record, we reject the argument. *See* ORCP 23 B (issues tried by consent).[2]

The proof question is a nonissue. Plaintiff's amended complaint alleged "a payment made by State Farm under the no-fault personal injury protection coverage * * * in the sum of $15,000." Defendant's amended answer alleged PIP payments in the same sum. When State Farm moved for a PIP offset, it reiterated its statement about PIP payments of $15,000, tendering its payment log reflecting that figure. In response, plaintiff did not dispute that sum.[3] Instead, plaintiff noted that her complaint "acknowledges [p]laintiff's receipt of State Farm's PIP limit of $15,000[.]"[4] In short, the court did not err in accepting as fact that State Farm had paid $15,000 in PIP benefits toward plaintiff's medical bills.

---

[2] In relevant part, ORCP 23 B provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * * [F]ailure so to amend does not affect the result of the trial of these issues."

[3] On appeal, she does not assign error to consideration, if any, of State Farm's exhibit, attached to its offset motion, although she criticizes it as unauthenticated hearsay. If consideration of that exhibit was potential error, she did not preserve it with such an objection in the post-trial proceedings below. More about the appropriateness of the post-trial submission follows in our discussion of procedure below.

[4] Among other things, she argued—albeit mistakenly—that the jury had been instructed on the undisputed $15,000 payment and had already subtracted it.

The procedural question requires more discussion. As noted, plaintiff argues that, because State Farm did not prove its PIP payments in the trial, it could not offset PIP payments in a post-trial proceeding. State Farm responds that PIP payments in an uninsured or underinsured motorist (UM/UIM) claim function like PIP payments in typical tort claims—that is, as advance payments—and may be offset in a post-trial proceeding. State Farm is correct.

The complementary or offsetting relationship of PIP and UM/UIM coverage is described in the enigmatic ORS 742.542, which provides:

> "Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damages that the insured may be entitled to recover from the insurer under uninsured or underinsured motorist coverage for the same accident but may not be applied in reduction of the uninsured or underinsured motorist coverage policy limits."

In *Farmers Ins. Co. v. Conner*, 219 Or App 337, 355, 182 P3d 878, *rev den*, 345 Or 94 (2008), we explained that

> "the legislature intended ORS 742.542 to limit an insurer's ability [to] seek an offset or reimbursement of PIP benefits to the extent that the insured's damages exceed the limits of the UM/UIM policy."

Although the statute's language is "less than clear," we indicated that "the legislature intended that insureds would be entitled to both UIM and PIP benefits up to the level of their damages." *Id.* In other words, UIM and PIP benefits may "stack" to the extent damages exceed the UIM policy limit. When damages do not exceed the UIM limit, PIP benefits are subtracted from damages to determine a net figure that is the amount of UIM benefits due. In either case, the key is the determination of damages.

Plaintiff's difficulty is that, in her claim against State Farm, she did not seek a determination of damages in excess of the UIM limits so as to preclude a PIP offset and to "stack" UIM and PIP benefits under ORS 742.542. Instead, her proposed verdict form advised the jury:

> "The combined total of [p]laintiff's economic and non-economic damages may not exceed the remaining limits of State Farm's underinsured motorist coverage in the sum of $82,734.41. In assessing damages, you should consider that Plaintiff has already received $1,000 from the insurer for the driver who caused the accident, and has received $17,265.59 from State Farm."

Plaintiff did not object to the substance of the court's verdict form, which was similar in its essence to her proposed form; she only objected that it was not *her* requested form. In colloquy, plaintiff suggested that the maximum damages should be that same figure of $82,734.41. Plaintiff agreed that the verdict's question 2 was properly framed. That question asked, in usual fashion,

> "What are the plaintiff's additional damages?
>
> "Economic         _____
>
> "Non-economic   _____
>
> "The total amount of economic and non-economic damages may not exceed the sum of $82,734.41."

Plaintiff has not assigned error or plain error to the use of that verdict form or to its limitation on damages. As recounted, the jury returned a total verdict of $82,734.41, in which its economic damages of $72,734.41 were less than the remaining balance of the policy limit and less than plaintiff's evidence of $158,814.88 in medical bills.

Plaintiff was not unwittingly trapped in a position of seeking a jury's determination of actual damages that was limited to policy limits. The jury's limitation on damages was plaintiff's choice. Foreseeing the problem that presented, the trial court offered to allow plaintiff to amend by interlineation to permit the jury to find damages of $258,814.88. That amendment would have allowed a finding of damages permitting plaintiff to take advantage of "stacking" under ORS 742.542, but plaintiff declined to amend.

Plaintiff insisted on her theory that, to offset PIP against UIM benefits, State Farm must plead and prove PIP payments during the trial of plaintiff's UIM case. Plaintiff contends that must be so because an offset under ORS

742.542 should be like an affirmative defense of "payment" under ORCP 19 B.[5] We are not persuaded, however, given the proceedings in this case, recited above, and the statutory framework on post-trial proceedings.

Post-trial proceedings are what the legislature has provided when a court must consider PIP payments that serve to reduce a jury's verdict on damages in the typical personal injury case involving an injured plaintiff and defendant tortfeasor. In relevant part, ORS 31.555 provides:

"(1)  If judgment is entered against a party on whose behalf an advance payment referred to in ORS 31.560 or 31.565 has been made and in favor of a party for whose benefit any such advance payment has been received, the amount of the judgment shall be reduced by the amount of any such payments in the manner provided in subsection (3) of this section. ***

"(2)  If judgment is entered against a party who is insured under a policy of liability insurance against such judgment and in favor of a party who has received benefits that have been the basis for a reimbursement payment by such insurer under ORS 742.534, the amount of the judgment shall be reduced by reason of such benefits in the manner provided in subsection (3) of this section.

"(3)(a)  The amount of any advance payment referred to in subsection (1) of this section may be submitted by the party making the payment, in the manner provided in ORCP 68 C(4) for the submission of disbursements.

"* * * * *

"(c)  Unless timely objections are filed as provided in ORCP 68 C(4), the court clerk shall apply the amounts claimed pursuant to this subsection in partial satisfaction of the judgment. Such partial satisfaction shall be allowed without regard to whether the party claiming the reduction

---

[5]  In relevant part, ORCP 19 B provides:

"In pleading to a preceding pleading, a party shall set forth affirmatively: accord and satisfaction; arbitration and award; assumption of risk; claim preclusion; comparative or contributory negligence; discharge in bankruptcy; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; issue preclusion; laches; license; payment; release; statute of frauds; statute of limitations; unconstitutionality; waiver; and any other matter constituting an avoidance or affirmative defense."

is otherwise entitled to costs and disbursements in the action."

In turn, ORS 31.550 defines an "advance payment" as "compensation for the injury or death of a person or the injury or destruction of property prior to the determination of legal liability therefor." *See also* ORS 31.560(2) (further defining an advance payment to include payment made to the injured person or certain others).

Typically, ORS 31.555(1) includes a situation in which an advance payment is made by a defendant's liability insurer (*i.e.*, "on behalf" of the tortfeasor) to the injured party and that advance payment serves as a prepayment to reduce an award of damages. *Cf. Snyder v. Espino-Brown*, 350 Or 141, 152, 252 P3d 318 (2011) (effect of liability insurer's advance payment for auto damage to co-owner on statute of limitations).

The same result occurs under ORS 31.555(2), in a situation more complex. That provision governs when the injured plaintiff has received PIP benefits from his or her own insurer—payments that serve to pay wage loss or medical bills that are at issue in a tort claim against a defendant. When the defendant's liability insurer reimburses plaintiff's PIP insurer those payments, the defendant's liability insurer has effectively paid down some of plaintiff's medical bills or wage loss. Therefore, the defendant may use that PIP reimbursement to reduce an award of damages. *See, e.g.*, *Cooksley*, 289 Or App at 106-07 (PIP reimbursement reducing damages); *Mitchell v. Harris*, 123 Or App 424, 430-31, 859 P2d 1196 (1993) (same).

In either case, the reduction of the award of damages occurs in a post-trial proceeding that parallels the handling of disbursements or attorney fees under ORCP 68 C(4). ORS 31.555(3)(a), (c). In *Cooksley*, the plaintiff made the same argument as does plaintiff in this case, that, in order to offset PIP payments, the defendant must have pleaded and proved an offset under ORCP 19 B. We rejected that argument without discussion. *Cooksley*, 289 Or App at 106-07. The explanation is found in the statutory provision for a post-trial proceeding under ORS 31.555(3) and ORCP 68 C(4).

In this case, plaintiff seeks to distinguish *Cooksley* as applicable to personal injury cases between an injured plaintiff and the defendant tortfeasor and as inapplicable to a plaintiff's UIM claim. There is, however, authority to the contrary. We have construed ORS 31.555 as applicable to the situation in which PIP payments are to be offset in a UIM claim. *Daniels v. Allstate Fire & Casualty Co.*, 289 Or App 698, 701-02, 412 P3d 249, *rev den*, 362 Or 794 (2018). That stands to reason inasmuch as PIP payments are advance payments, within the meaning of ORS 31.550; the UIM insurer is a party against whom a judgment is made; and the UIM claimant is the person for whom the PIP payments have been made. *See* ORS 31.555(1) (employing such terms). Because a post-trial proceeding is the appropriate procedure, the trial court did not err in employing that procedure to allow State Farm's post-trial motion to offset its PIP payments from damages previously determined at trial.

## EVIDENCE OF PIP BENEFITS

In her second assignment of error, plaintiff argues that the trial court erred in granting State Farm's motion *in limine* to exclude evidence at trial of State Farm's payment of $15,000 in PIP benefits. State Farm argued that PIP payments were irrelevant, were undisputed, and were a matter for a post-trial offset. State Farm argued that PIP is a separate benefit and that evidence of PIP payments would unfairly prejudice State Farm by giving the impression that those amounts were owed under UIM coverage. The court confirmed with State Farm that "the essence" of its motion was that evidence of PIP payments "just is prejudicial."

In response to State Farm's motion, plaintiff argued that ORCP 19 B required State Farm to prove its PIP payments at trial and, when it did so, plaintiff could invoke a presumption that, because a payment was made, it was owed. Plaintiff argued that, because she was entitled to such a presumption, it was State Farm's burden to prove that the amounts were unreasonable. Plaintiff added that evidence of PIP payments would allow the court to determine whether the jury had awarded damages that PIP paid, but, when the court pointed out that the jury simply gives a dollar figure, plaintiff did not explain how her approach

would work. Given plaintiff's theory of relevance in that pretrial argument, the court determined that PIP payments would not be "relevant" and a PIP offset would be considered post-trial.

The issue arose again during trial when plaintiff indicated that she planned to testify in her rebuttal case about receiving PIP benefits. Plaintiff "acknowledged" that State Farm paid medical expenses of $15,000 in PIP benefits and argued that the figure was more than the $3,500 that State Farm conceded was related to the accident. Plaintiff repeated that, as a matter of law, there is a presumption that arises that, because someone paid a sum, the sum was due and owing. Plaintiff relied on OEC 308 and OEC 311(1)(d) in support of her argument. OEC 308 provides:

> "In civil actions and proceedings, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

OEC 308. OEC 311(1)(d) advises, "Money paid by one to another was due to the latter." Plaintiff explained that, because State Farm paid medical bills of $15,000 under PIP coverage, the PIP payments were an "admission" that $15,000 was owing under UIM coverage, too. Later, plaintiff urged that the presumption means that PIP payments were owing, reasonable, and necessary, making it State Farm's obligation to rebut that presumption.

State Farm responded that, for several reasons, PIP and UM/UIM are "distinctly different coverages, each subject to different statutory requirements and tests." First, State Farm noted that medical bills submitted for PIP payment are required to be paid "promptly after proof of loss has been submitted to the insurer," ORS 742.520(3), and they are presumed to be reasonable and necessary unless denied within 60 days, ORS 742.524(1)(a).[6] Second, PIP

---

[6] In relevant part ORS 742.524(1)(a) provides:

"Expenses of medical, hospital, dental, surgical, ambulance and prosthetic services are presumed to be reasonable and necessary unless the provider receives notice of denial of the charges not more than 60 calendar days after the insurer receives from the provider notice of the claim for the services."

coverage does not pay the face amount of medical bills and, instead, pays at workers' compensation rates, with certain exceptions. *See* ORS 742.525(1)(b) (referring to workers' compensation rates at ORS 656.248). Third, State Farm noted that a PIP insurer has the unique risk of owing a claimant attorney fees for denying a PIP claim by doubting a causal connection between the bill and the accident, citing *Grisby v. Progressive Preferred Ins. Co.*, 343 Or 175, 166 P3d 519, *modified on recons*, 343 Or 394, 171 P3d 352 (2007). As a result, State Farm observed, "PIP insurers have been forced to pick their battles very carefully, and tend to err on the side of paying PIP benefits to avoid attorney fee exposure."

The trial court sustained State Farm's objection to evidence of PIP payments in the trial of the UIM claim. The court explained that "UIM and PIP are totally different animals." They are forms of coverage that have "different considerations." And, it would not "be fair" for State Farm to be subject to plaintiff's proposed presumption "given the different considerations in play and the different * * * objectives of the two different insurance schemes."

On appeal, the parties reprise their arguments below. Plaintiff confirms that she introduced "evidence of *all* of her accident-related medical bills." Necessarily, those included bills paid by PIP. (Emphasis in original.) She argues that the court's exclusion of evidence of PIP payments "prevented" her from eliminating the possibility that the "jury's award could include any of State Farm's PIP payments." For its part, State Farm elaborates on the differences between the PIP and UM/UIM schemes by arguing that admission of PIP payments would require expert witnesses to explain the differences in coverage and claims-handling. State Farm asserts that the coverage comparison would mislead or confuse the jury and would have prejudiced the insurer.

To the extent that the trial court's ruling is simply a question of relevance under OEC 401, we review for legal error, and, to the extent that the trial court's decision was a question of prejudice under OEC 403, we review for an abuse of discretion. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Under OEC 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence." The rule "requires a rational relationship between the evidence offered and the substantive issues properly provable in the case." *State v. Turnidge (S059155)*, 359 Or 364, 450, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017) (internal quotation marks omitted). Plaintiff, as the proponent of the evidence at issue, had the burden to demonstrate its relevance. *State v. Pitt*, 352 Or 566, 576, 293 P3d 1002 (2012).

Under OEC 403, we generally defer to the trial court's assessment "whether the probative value of the evidence is substantially outweighed by the potential for prejudice." *State v. Williams*, 313 Or 19, 29-30, 828 P2d 1006, *cert den*, 506 US 858 (1992). An abuse of discretion occurs when a court exercises its discretion "to an end not justified by, and clearly against, evidence and reason." *State v. Mason*, 100 Or App 240, 243, 785 P2d 378 (1990). Generally, OEC 403 favors admissibility, placing the burden on the party seeking exclusion of the evidence, but it also provides a means to exclude distracting evidence from a trial. *State v. O'Key*, 321 Or 285, 320, 899 P2d 663 (1995).

In our earlier discussion, we rejected plaintiff's proposition that State Farm was required to offer evidence of its PIP payments as part of the trial of plaintiff's UIM claim in order to claim an offset of PIP against damages. It was sufficient for a PIP offset that plaintiff chose to prove "all" medical bills, including those that happened to have been paid by PIP benefits. Contrary to plaintiff's view, the prospect that an award of economic damages includes some damages paid by PIP in an undetermined amount does not prevent a PIP offset. *Wade v. Mahler*, 167 Or App 350, 355-58, 1 P3d 485, *rev den*, 331 Or 334 (2000); *Mitchell v. Harris*, 123 Or App 424, 430-31, 859 P2d 1196 (1993); *Dougherty v. Gelco Express Corp.*, 79 Or App 490, 495-96, 719 P2d 906 (1986). *But see York v. Paakkonen*, 259 Or App 276, 285-86, 313 P3d 332 (2013) (defendant's objection prevents plaintiff from identifying damages paid by PIP).

Relatedly, we reject plaintiff's proposition that evidence of PIP payments was relevant to permit her to resist an offset of PIP payments from damages. Her means to

resist a PIP offset were twofold and within her control. The first means involves her choice to include damages paid by PIP benefits among her damages. As the trial court invited plaintiff to do, she could have alleged and proved total damages (including those paid by PIP benefits), and potentially received a verdict for damages at or above the combined limits of PIP and UIM coverage. Doing so would have "stacked" PIP and UIM and prevented an offset under ORS 742.542. *See Conner*, 219 Or App at 355 (explaining statute). Doing so would have avoided a PIP offset without any evidence about which damages were paid by PIP coverage. Plaintiff, however, declined the trial court's invitation to seek her total damages of $258,814.88.

Her second choice involves refraining from proving damages that were paid by PIP benefits. She could have chosen to allege and prove only damages that were later than, or other than, those damages that were paid by PIP benefits. In this case, State Farm had paid PIP benefits through late 2017. If plaintiff had simply omitted the first several months of medical bills (those paid by PIP), then State Farm would not have succeeded in offsetting PIP payments. *See Brus v. Goodell*, 119 Or App 74, 76-78, 849 P2d 552 (1993).[7] Hence, evidence of PIP benefits was not necessary for plaintiff to prove as a means to avoid a PIP offset.

We also reject plaintiff's proposition that evidence of PIP benefits was admissible to prove that, because State Farm paid PIP benefits, UIM benefits were owing, reasonable, and related, and, further, that State Farm had the burden to disprove such a presumption under OEC 308 and OEC 311(1)(d). Although it is true that State Farm had paid PIP benefits of $15,000, it had *not* paid $15,000 in UIM benefits.[8] Plaintiff's UIM claim sought UIM benefits, not PIP benefits, and so it cannot be said that State Farm's $15,000

---

[7] The record in *Brus* reflects that the plaintiff refrained from introducing evidence of lost earnings in the first month after the accident and that, for good measure, the court instructed the jury *not* to include any award of damage for the first month following plaintiff's injuries. We construed the record to exclude PIP benefits for lost earnings and held that a PIP offset was properly denied. *Brus*, 119 Or App at 76-78.

[8] That is not to be confused, of course, with State Farm's later advance payment of UIM benefits of $17,265.59.

PIP payments were payments of UIM benefits that must be presumed to be owing. *See* OEC 311(1)(d) (presumption that sum paid is owing). Given the way in which plaintiff conflated PIP and UIM coverage, the trial court was not wrong determining that the PIP benefits were not relevant—at least when offered based on an oversimplified theory of relevance. The coverages are indeed "different."

We do recognize that both forms of coverage pay medical expenses. PIP benefits pay medical bills that are "reasonable and necessary" resulting from use of motor vehicles. ORS 742.520(2) (injury or death resulting from use, occupancy, or maintenance of motor vehicles); ORS 742.524(1)(a) (reasonable and necessary medical expenses). UM/UIM coverage pays all sums the insured is legally entitled to recover as damages from an uninsured or underinsured operator caused by an accident involving the vehicle. ORS 742.504(1)(a). And, economic damages are understood to be those that are "reasonable charges necessarily incurred for medical and other care." ORS 31.710(2)(a) (defining economic damages).

It is not inconceivable to think that an insurer's payment of PIP benefits as reasonable, necessary, and related might have a tendency to make more likely a "fact of consequence." Potentially, that "fact of consequence" might be that the same medical bills would be bills that an uninsured or underinsured motorist or UM/UIM insurer owes as "reasonable charges necessarily incurred for medical care" resulting from the accident. Yet, the proposition strains the required "rational relationship between the evidence offered and the substantive issues properly provable in the case." *Turnidge*, 359 Or at 450 (internal quotation marks omitted). The substantive issue to be proved in plaintiff's UIM case is whether plaintiff can establish—at trial and after much discovery by an insurer—that medical bills are reasonable, necessary, and causally connected to the accident. That question is not necessarily or qualitatively the same question whether a PIP insurer—in the immediate weeks after an accident—has paid PIP benefits.

Even if we assume without deciding that payment of PIP benefits could have probative value in a UIM claim,

we would not conclude that the trial court abused its discretion in excluding evidence of them in this case. The trial court correctly observed that PIP and UM/UIM are "distinctly different" forms of coverage. A UM/UIM claim is a "case within a case," in which plaintiff bears the burden of proving the ordinary elements of a personal injury tort claim as if against the uninsured or underinsured motorist. *See Spearman v. Progressive Classic Ins. Co.*, 276 Or App 114, 136, 366 P3d 821 (2016), *aff'd*, 361 Or 584, 396 P3d 885 (2017) (describing a UIM claim as a case within a case). As State Farm noted, PIP coverage differs. PIP is no-fault coverage in which benefits are required to be paid promptly on proof of loss. ORS 742.520(3); *see Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 300, 613 P2d 32 (1980) ("The obvious purpose of [the PIP statutes] is to provide, promptly and without regard to fault, reimbursement for some out-of-pocket losses resulting from motor vehicle accidents."); *Weatherspoon v. Allstate Ins. Co.*, 193 Or App 330, 338-39, 89 P3d 1277, *rev den*, 337 Or 327 (2004) (comparing PIP and UM/UIM claims). Under PIP coverage, medical bills are presumed reasonable if not disputed within 60 days. ORS 742.524(1)(a). With certain exceptions, PIP benefits are paid at lower, workers' compensation rates. *See* ORS 742.525 (1)(b) (referencing ORS 656.248). And, if bills *are* disputed on the ground that they may not be causally related to the accident, the PIP insurer is in peril of owing the insured attorney fees if those expenses are later shown to be so related. *Grisby*, 343 Or at 184.

Those things are not true of a UM/UIM claim, where the insurer "stands in the shoes" of the uninsured or undersinsured motorist and, as we discuss next, does not necessarily risk exposure to attorney fees for questioning the causal connection regarding damages. *See* ORS 742.504(1)(a) (UM/UIM pays liability and damages of UM/UIM motorist); *see also Spearman*, 361 Or at 601 (insurer still within "safe harbor" to avoid attorney fees when asserting plaintiff had no damages). State Farm is persuasive in suggesting the difficulty of engaging expert witnesses to explain to a jury the differences in coverage and claims-handling. *See Spearman*, 361 Or at 595 (referring to "significant differences between PIP and UM/UIM claims"). It is not hard to

foresee the resulting risk of confusion of issues or prejudice to the insurer. Nor is it unreasonable to consider that coverage differences could be collateral issues that are distracting and, ultimately, unnecessary.

In this case, the trial court recognized that the "essence" of State Farm's motion *in limine* was the unfairly prejudicial effect of evidence of PIP benefits, and the court determined it would not be "fair" to State Farm to allow evidence of PIP payments.[9] Given the colloquy, we understand the court to have considered the marginal relevance versus the unfairly prejudicial effect of that evidence. *See State v. Anderson*, 363 Or 392, 408-10, 423 P3d 43 (2018) (involving sparse colloquy). The court was unwilling to permit plaintiff to inject evidence of payments under a different form of insurance coverage into what was a "case within a case" as if against the uninsured motorist. The court was unwilling to do so where plaintiff's theory of relevance was that payment of PIP benefits meant payment of UIM benefits was owing. We conclude that the trial court did not abuse its discretion when excluding evidence of PIP payments from the UIM trial.

## ATTORNEY FEES

In her third assignment of error, plaintiff argues that the trial court erred in denying her petition for an award of attorney fees. She argues that she is entitled to attorney fees under ORS 742.061.[10] Relying on ORS 742.061(3), State Farm argues that it is exempt from exposure to plaintiff's attorney fees by the "safe harbor" provisions that apply when an insurer has admitted its coverage, offered to engage in binding arbitration and, in a UM/UIM case, limited its dispute to the fault of the uninsured or

---

[9] On appeal, plaintiff disputed that PIP benefits would be prejudicial, but she has not argued that the trial court failed to engage in the requisite considerations of OEC 403.

[10] In relevant part, ORS 742.061(1) provides:

"Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

underinsured motorist and determination of the plaintiff's damages.[11] Plaintiff argues that, because State Farm disputed that some of plaintiff's damages were related to the accident, State Farm had disputed "causation" and that the cause of damages is not an issue of "damages" within the meaning of ORS 742.061(3).

We have rejected plaintiff's argument in prior cases. We have held that

> "a dispute over the extent of damages caused is a dispute within the scope of permissible issues of liability or damages as provided by ORS 742.061(3). *Spearman v. Progressive Classic Ins. Co.*, 276 Or App 114, 116, 120, 128, 366 P3d 821 [(2016), *aff'd*, 361 Or 584 (2017)] (where some damages were admitted and others disputed). Indeed, the possibility of 'zero dollars' as a factual matter or as a result of a failure of proof is an 'ordinary and permissible determination of damages due in [an uninsured motorist] claim.' *Robinson v. Tri-Met*, 277 Or App 60, 68-69, 370 P3d 864 (2016)."

*McClain v. Safeco Ins. Co.*, 284 Or App 410, 412, 392 P3d 829, *rev den*, 361 Or 645 (2017). Soon after that decision, the Supreme Court confirmed our understanding of ORS 742.061(3). *Spearman*, 361 Or at 601 (rejecting argument that insurer's dispute about the cause of some damages exposed the insurer to attorney fees). Those decisions mean that, in this case, State Farm's dispute whether some damages were unrelated to the accident did not expose the insurer to risk of having to pay plaintiff's attorney fees.

## CONCLUSION

For those several reasons, the trial court did not err in reducing plaintiff's award of damages through an offset of PIP benefits determined in a post-trial proceeding, in excluding evidence of PIP benefits during the preceding

---

[11] ORS 742.061(3) provides:

"Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b) The insurer has consented to submit the case to binding arbitration."

trial of plaintiff's UIM claim, or in denying plaintiff's petition for attorney fees.

Affirmed.